*28 The opinion of the Court was delivered by
Clover, J.
After a plea of not guilty, a prisoner cannot avail himself of a misnomer, either on the trial or in arrest of judgment or on motion for a new trial. (State vs. Thompson, Cheves, 31.) But it is insisted that the entry on the indictment is not a general denial. Technically the term traverse means no more than turning over or putting off the trial to the succeeding term; but its meaning is often referred to the denying or taking issue upon an indictment. (State vs. Posey, 7 Rich. 484.) The more general and approved practice is to plead not guilty and to traverse. In oases on the criminal side of the Court, the accused has either found bail or is in custody. In misdemeanors, after the bill is found, if the defendant answers he must then plead, and an appearance and traverse is equivalent to a plea of not guilty and a postponement to the next term.
It is only necessary to add, in answer to the first and second grounds of appeal, that, up to the trial, no plea of misnomer verified by affidavit was filed.
It is argued in support of the grounds in arrest of judgment, that the defendant is indicted under the Act of 1817, (7 Stat. 454,) whereas, the trading charged is alone indictable under the Act of 1834, (6 Stat. 516). Both acts prohibit all persons, under the same penalty, from purchasing from any slave corn, &c. In the former Act, a ticket to deal, trade and traffic may be produced in justification of the act, whereas, in the latter the purchase of cotton, rice, Indian corn and wheat is forbidden with or without a permit. The Act of 1817, embraces all persons who buy or purchase any corn, peas, ricje, or other grain, &c., and certainly includes the defendant, who cannot complain that by its provisions, he may show the owner’s permit if he traded under its sanction. Beceiving is evidence of buying under either Act, and both prohibit buying from a slave by a clerk or any person acting for a shop-keeper. (State vs. Berhmann & Peters, 3 Hill, 90.) The *29 words of this indictment do also sufficiently describe the offence under the Act of 1834. The allegation is, that the defendant purchased com from a slave .of Joseph Glover named Cuffee, which sets out g, substantive offence, and the additional words, “ not having a permit,” &c., under the last Act would be unnecessary and may be stricken out as surplusage, (2 Rus. on Grimes, 786; The State vs. Coppenburg, 2 Strob. 273.) The defendant is not taken by surprise, for no fact is admitted in evidence which is not alleged against him and the Court can pronounce upon the legal effect of the part which is established by the verdict of the jury, (4 Stark. Ev. 1550, 1565.) It is enough that so much is stated as is necessary to describe the offence created by the Act. Referring the verdict to either Act, we see no reason to arrest the judgment, and the penalty being the same in both, no embarrassment can be felt in pronouncing the sentence.
The cases relied upon in the argument to show that the two Acts of 1817 and 1834, create distinct offences, and impose different punishments, have been misapprehended by counsel by confounding two Acts passed in 1834. The one (7 Stat. 468,) relating to distillers, venders and retailers of spirituous liquors, and the other (6 Stat. 516), embracing shop-keepers and traders. The former and not the latter was referred to by the Court in the several cases of the State vs. Anderson, Evans, Thomas and Stone, (1 Strob. 459; 3 Hill, 191; 7 Rich. 481 and Rice 147). In the case of State vs. Evans, a new trial was ordered because on distillers, &c., the Act imposes penalties different in degree from the Act of 1817, and the Court could not determine under which the defendant was indicted and convicted. The indictment in this case is not drawn with that care which should be bestowed upon the records of this Court; but we are of opinion that it may be sustained under either Act.
We are satisfied with the instructions of the Circuit Judge *30 respecting the ownership of the slave. It is alleged, that he was the slave of Joseph Glover, and the jury having so found, we will not order a new trial, as there was evidence sustaining their conclusion. It is also objected that the evidence proved the purchase to have been from a slave named Cuffee, whereas, the indictment charged that it was from a slave with a different name. If it cannot be read to meet the proof with certainty, it is an immaterial variance, and not greater than Anthron & Antrim, which was held to be certain to a common intent and sufficient. (The State vs. Scurry, 3 Rich. 68.)
Motion dismissed.
O’Neall, Wardlaw, Withers and Whitner, JJ., concurred.

Motion dismissed.